UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4055
(1:06-cr-00474-NCT-1)

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

RODNEY ANTON WILLIAMSON,

               Defendant - Appellant.

O R D E R

The Court amends its opinion filed August 3, 2011, as follows:

On the cover sheet, attorney information section, the names of "ON BRIEF" counsel "Anna Mills Wagoner, United States Attorney, Sandra J. Hairston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina" are deleted and replaced with "Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4055**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

RODNEY ANTON WILLIAMSON,

       Defendant - Appellant.

On Remand from the Supreme Court of the United States.
(S. Ct. No. 09-8915)

Argued: May 10, 2011          Decided: August 3, 2011

Before GREGORY and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Vacated and remanded with instructions by unpublished opinion.
Judge Gregory wrote the opinion, in which Judge Duncan and
Senior Judge Hamilton joined.

**ARGUED:** J. David James, SMITH, JAMES, ROWLETT & COHEN, LLP,
Greensboro, North Carolina, for Appellant. Vijay Shanker,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Lanny A. Breuer, Assistant Attorney
General, Greg D. Andres, Acting Deputy Assistant Attorney
General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Appellant challenges the admission of a recorded statement, made to a confidential informant after Appellant had been indicted but before he was arrested. Because we find that recording may have implicated Appellant's right against self-incrimination, we vacate and remand to determine if the Government violated the Fifth Amendment.

I.

This is the second time this case has come before our Court. We previously summarized the key facts:

> Rodney Anton Williamson was indicted, along with others, and charged with one count of conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846 (2006). The sealed indictment was issued December 18, 2006, and a warrant for Williamson's arrest was issued the following day. In January 2007, a confidential informant, acting in concert with law enforcement agents, met with Williamson while wearing a recording and transmitting device. At the conclusion of the meeting, law enforcement attempted to arrest Williamson on the outstanding warrant; however, he successfully evaded arrest. . . . Williamson was eventually apprehended and arraigned on June 12, 2007.

United States v. Williamson, 337 Fed. Appx. 288, 289-290 (4th Cir. 2009) (unpublished, per curiam) (hereinafter, "Williamson I").

At trial, the Government sought to introduce, inter alia, the recorded statement between Appellant and the confidential

2

informant, Edison Alberty. The transcript of that recording goes on for forty pages in the record and contains numerous allusions to the sale, weights, and transportation of drugs by various means. J.A. 330-370. The district court noted that the recording was "very damaging" to Appellant and worried that parts of the tape were "unintelligible." J.A. 285, 297, 290. Although the district court initially offered the Government an opportunity to redact the recording, Appellant's trial counsel asked to play the entire recording anyway. After the district court suggested Appellant's trial counsel confirm that decision with her client, the court proceeded to play the entire recording for the jury.

Subsequently, Appellant's trial counsel portrayed the recording as "complicated" and difficult to understand, and questioned whether it personally implicated Appellant in drug dealing. Government's S.J.A. 10. The Government stressed the origins and importance of this recording in its closing argument: "these are the [Appellant]'s own words . . . ." Appellant's S.J.A. 20. Rhetorically, the Government asked "[d]o you need fingerprints? [Appellant] told you he left [the drugs with a third party]." Id. at 20-21. Regarding the lack of a paper trail in the case, the Government highlighted that Appellant "even says during the recording . . . that he didn't have any thing [houses or cars] in his name." Id. at 23. In

3

conclusion, the Government emphasized: "He said it. His words. His organization, his conspiracy." Id. at 23. Appellant was subsequently convicted and sentenced to life imprisonment.

In his first appeal, Appellant claimed that the admission of the recording violated his right to counsel under the Sixth Amendment. In an unpublished, per curiam decision, our Court found that this admission did not constitute plain error, namely because we had previously "held that the Sixth Amendment right to counsel does not attach even after a defendant has been arrested based on the filing of a criminal complaint nor is the right triggered during the period between a defendant's arrest and his arraignment." Williamson I, 337 Fed. Appx. at 291 (citations omitted).[1]

Appellant petitioned for certiorari. The Government then conceded that the Sixth Amendment did attach upon the issuance of the sealed indictment, but maintained that Appellant could not show the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. On June 21, 2010, the Supreme Court vacated and remanded in light of the Solicitor General's brief. Williamson v. United States, 130 S.

---

[1] We found meritless Appellant's other claims about the substitution and effectiveness of his trial counsel. Williamson I, 337 Fed. Appx. at 291. Those issues are no longer in contention.

4

Ct. 3461 (2010). Chief Justice Roberts along with Justice Scalia, Justice Thomas, and Justice Alito dissented for the reasons stated in Nunez v. United States, 554 U.S. 911 (2008) (Scalia, J. dissenting). The dissent in Nunez primarily contended that the Court has "no power to set aside (vacate) another court's judgment unless we find it to be in error." Id. at 912.

II.

A.

Since Appellant's trial counsel failed to raise any constitutional issues at trial, we continue to review for plain error. Williamson I, 337 Fed. Appx. at 289.

The parties now agree that introducing the recording violated the Sixth Amendment because the right to counsel attached when Appellant was indicted. Massiah v. United States, 377 U.S. 201 (1964). But the parties disagree about whether that constituted harmless error -- and focus on the importance of Alberty's recording and the reliability of cooperating witness testimony. We need not delve into the net effects of the Sixth Amendment violation, however, because this case involves another unresolved constitutional issue.

The Fifth Amendment establishes that no person "shall be compelled in any criminal case to be a witness against himself .

5

. . ." U.S. Const. amend. V. This "basic," "[c]ardinal" guarantee requires that "men are not to be exploited for the information necessary to condemn them before the law, [and] that . . . a prisoner is not 'to be made the deluded instrument of his own conviction.'" Culombe v. Connecticut, 367 U.S. 568, 581 (1961) (quoting 2 Hawkins, Pleas of the Crown 595 (8th ed. 1824)). "The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants." United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990).

This right "was hard-earned by our forefathers," Quinn v. United States, 349 U.S. 155, 161-62 (1955), and reflects "many of our fundamental values and most noble aspirations," including a "preference for an accusatorial rather than an inquisitorial system of criminal justice," "our sense of fair play," and our "fear that self-incriminating statements will be . . . abuse[d]" and untrustworthy. Murphy v. Waterfront Commission, 378 U.S. 52, 84 (1964); see also Winthrow v. Williams, 507 U.S. 680 (1993) (citing Murphy, 378 U.S. at 55). Therefore, the Fifth Amendment "must be accorded liberal construction in favor of the right it was intended to secure . . . . [T]o treat it as a historical relic, at most merely to be tolerated [] is to ignore its development and purpose." Quinn, 349 U.S. at 161-62.

"[S]ince at least as long ago as 1807, when Chief Justice Marshall first gave attention to the matter in the trial of Aaron Burr, all have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion." Hoffa v. United States, 385 U.S. 293, 303-304 (1966). Appellants' statements, elicited via confidential informants, can violate the Fifth Amendment if they "rise to the level of compulsion or coercion" or are not voluntary. Illinois v. Perkins, 496 U.S. 292, 297 (1990). Perkins also noted that the degree of compulsion in that case was diminished because "no charges had been filed on the subject of the interrogation . . . ." Id. at 299. In turn, "a confession obtained by compulsion must be excluded whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise." Wan v. United States, 266 U.S. 1, 14-15 (1924) (citing Bram v. United States, 168 U.S. 532 (1897)).

When a defendant incriminates him or herself outside the presence of counsel, the Fifth and Sixth Amendments can become closely intertwined. Namely, excluding counsel and eliciting an incriminating statement often occur simultaneously or proximately. Furthermore, the remedy for improper self-incriminating statements and for statements made without counsel is often the same: exclusion of that evidence.

The Supreme Court has recognized this conceptual overlap: In Maine v. Moulton, the Court acknowledged the close relationship between excluding attorneys and eliciting self-incriminating statements. 474 U.S. 159 (1985). Moulton also involved a defendant who had already been indicted and a confidential informant. The Court held that the "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." Id. at 176 (emphasis added).

More recently, in Kansas v. Ventris, the Court explicitly noted that its Fifth and Sixth Amendment jurisprudence shared a common foundation. In that case, which involved a Sixth Amendment challenge to jailhouse informants, the Supreme Court concluded that its "opinions under the Sixth Amendment, as under the Fifth, have held that the right covers pretrial interrogations to ensure that police manipulation does not render counsel entirely impotent--depriving the defendant of 'effective representation by counsel at the only stage when legal aid and advice would help him.'" 129 S. Ct. 1841, 1845 (2009) (quoting Massiah, 377 U.S. at 204 (internal quotation marks and citations omitted)) (emphasis added).

8

And in Massiah itself, the Court pointed out that a defendant who is recorded by a confidential informant is "more seriously imposed upon . . . because he did not even know that he was under interrogation by a government agent." 377 U.S. at 206 (citations omitted). Massiah involved Fourth, Fifth, and Sixth Amendment challenges when a federal agent surreptitiously elicited statements from an indicted defendant. Id. at 204. The Court held that it violated "the basic protections of [the Sixth Amendment] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Id. at 206 (emphasis added). Massiah also pointed out that "if such a rule is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse." Id. (citations omitted) (emphasis added).

B.

This case potentially implicates Fifth Amendment issues, since it involves a lengthy recitation of Appellant's own words, elicited after Appellant had been indicted, by a confidential informant who was cooperating with the Government. Appellant's incriminating statements, which the district court found to be "very damaging" to him, J.A. 287, 290, were then directly used

9

against Appellant and introduced as evidence during the government's case in chief.

Because this issue has not been fully briefed before this Court or addressed by the district court, we vacate and remand so that the district court can determine if there has been a Fifth Amendment violation. While the "'ultimate constitutional question' of the admissibility of a confession was a 'mixed [question] of fact and law' subject to plenary federal review," this case involves "subsidiary factual questions" beyond our Court's jurisdiction. <u>Miller v. Fenton</u>, 474 U.S. 104, 112 (1985) (citations omitted). Indeed, "we do not resolve any of the disputed questions of fact relating to the details of what transpired within the confession . . . or whether [Appellant] actually did confess." <u>Ashcraft v. Tennessee</u>, 322 U.S. 143, 152 (1944). In comparable constitutional contexts, whether something was "'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227 (1973).

On remand, the district court should determine if Appellant's statements were subject to "some kind of compulsion"

10

or "were the product of any sort of coercion, legal or factual."[2] <u>Hoffa</u>, 385 U.S. at 304. The district court should also consider whether the "fil[ing of charges] on the subject of the interrogation" affected the degree of compulsion. <u>Perkins</u>, 496 U.S. at 299. Voluntariness, in turn, should be "assessed [using] the totality of all the surrounding circumstances --

---

[2] We are mindful of the Supreme Court's additional guidance in this area: In <u>Massiah</u>, the Court pointed out that a defendant is "more seriously imposed upon . . . because he did not even know that he was under interrogation by a government agent" in the first place. 377 U.S. at 206 (citations omitted). Notably, <u>Perkins</u> distinguished itself from <u>Massiah</u> on the basis that "[i]n the instant case no charges had been filed on the subject of the interrogation . . . ." 496 U.S. at 299. <u>Perkins</u> itself concerned the broader issue of whether jailhouse informants must give <u>Miranda</u> warnings. In that context, <u>Perkins</u> distinguished a jailhouse interview by an IRS agent on the grounds that "[w]here the suspect does not know that he is speaking to a government agent there is no reason to assume the possibility that the suspect might feel coerced." 496 U.S. at 299. More generally,

> [a]lthough [] decisions [about the propriety of interrogation techniques have] framed the legal inquiry in a variety of different ways, usually through the 'convenient shorthand' of asking whether the confession [is] 'involuntary,' <u>Blackburn v. Alabama</u>, 361 U.S. 199, 207 (1960), the Court's analysis has consistently been animated by the view that 'ours is an accusatorial and not an inquisitorial system,' <u>Rogers v. Richmond</u>, 365 U.S. 534, 541 (1961), and that, accordingly, tactics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness.

<u>Id.</u> at 301 (Brennan, J., concurring) (citing <u>Miller v. Fenton</u>, 474 U.S. 104, 109-110 (1985)). We defer to the district court for its initial consideration of the circumstances surrounding Appellant's conversation with confidential informant Alberty.

11

both the characteristics of the accused and the details of the interrogation." Schneckloth, 412 U.S. at 226. Towards this end, the district court should make any necessary factual findings and might consider the following factors and the extent, if any, to which they affected Appellant's encounter with Alberty: (1) the degree of police involvement in eliciting Appellant's statement; (2) Alberty's knowledge of the impending criminal prosecutions and his relationship to Appellant; (3) the nature of Alberty's questions and demeanor; and (4) the character of Appellant's statement and responses. See id. at 298, 300 (examining "[un]equal" power dynamics; "intimidat[ion] by the atmosphere;" "questions that may elicit an incriminating response;" and whether defendant felt that his interrogator "had any legal authority to force him to answer questions" or had the ability to "affect [his] future treatment"); Schneckloth, 412 U.S. at 218 (considering the age and education of the accused and the nature of the questioning in assessing voluntariness).

III.

For the reasons stated above, this case is

VACATED AND REMANDED WITH INSTRUCTIONS.

12