**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RODNEY ANTON WILLIAMSON,

*Defendant-Appellant.*

No. 08-4055

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RODNEY ANTON WILLIAMSON,

*Defendant-Appellant.*

No. 11-5179

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RODNEY ANTON WILLIAMSON,

*Defendant-Appellant.*

No. 12-6933

Appeals from the United States District Court
for the Middle District of North Carolina,
at Durham and Greensboro.
N. Carlton Tilley, Jr., Senior District Judge.
(1:06-cr-00474-NCT-1)

Argued: October 26, 2012

Decided: February 4, 2013

Before GREGORY and DUNCAN, Circuit Judges, and
Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Wilson wrote the opin-
ion, in which Judge Gregory and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** J. David James, SMITH, JAMES, ROWLETT &
COHEN, LLP, Greensboro, North Carolina, for Appellant.
Sandra Jane Hairston, OFFICE OF THE UNITED STATES
ATTORNEY, Greensboro, North Carolina, for Appellee. **ON
BRIEF:** Ripley Rand, United States Attorney, Greensboro,
North Carolina, for Appellee.

---

## OPINION

WILSON, District Judge:

The issues in these consolidated appeals arise from Rodney
Anton Williamson's 2007 conviction for conspiracy to dis-
tribute cocaine. At Williamson's trial, the government intro-
duced, without objection, an incriminating tape-recording
made by a government informant after Williamson had been
indicted. A jury found Williamson guilty, the court sentenced
him to life in prison, and he appealed. On appeal, we agreed
with the government's argument that the admission of Wil-
liamson's post-indictment, pre-arrest recording did not violate

Williamson's Sixth Amendment right to counsel. After Williamson petitioned for certiorari, the government changed positions and conceded in the Supreme Court that Williamson's Sixth Amendment right to counsel attached upon the return of his indictment and that the admission of the surreptitious, post-indictment, pre-arrest recording violated that right. In light of the government's new position, the Supreme Court vacated and remanded to this court for further consideration. On remand, we deferred the Sixth Amendment question and asked the district court to conduct an evidentiary hearing to determine whether Williamson's statements, elicited as they were by a confidential informant post indictment, were a product of compulsion or coercion in violation of the Fifth Amendment. The district court duly determined that Williamson's statements were voluntary and found no Fifth Amendment violations underlying the recorded conversation. Williamson once again appealed the district court's decision. While those proceedings unfolded, Williamson moved the district court for a new trial under Rule 33 of the Federal Rules of Criminal Procedure and requested the district court to appoint him counsel to assist with his new-trial motion. The district court denied those motions, and Williamson filed his third appeal. We now have before us on appeal the Fifth Amendment issue we remanded to the district court, the Sixth Amendment issue remanded to us by the Supreme Court, the newly raised Rule 33 right-to-counsel issue, and various other issues Williamson has raised along the way. We affirm.

I.

On December 18, 2006, a grand jury returned a one-count sealed indictment against Williamson and several others charging a conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841 and 846. A warrant for Williamson's arrest issued the following day. Within weeks, one of Williamson's associates, Edison Alberty, surmised that he was the target of an investigation and contacted

federal authorities to offer his cooperation. Soon after, federal agents fit Alberty with an audio recording device and had him meet with Williamson at a Greensboro, North Carolina, restaurant for lunch. According to Alberty, officers gave him no instructions other than to "put the body wire on and go have . . . lunch as planned." Second Supplemental J.A. 33. During that January 29, 2007, lunch meeting, Williamson and Alberty discussed Williamson's drug organization, made tentative plans for an upcoming drug transaction, and expressed their concerns regarding an associate's recent arrest. At the conclusion of the meeting, law enforcement agents attempted to arrest Williamson, but he hurriedly left the restaurant's parking lot and sped away. It was not until June 5, 2007, that agents succeeded in arresting him.

At Williamson's trial, the government called eight witnesses—three law enforcement officials, two codefendants, and three other alleged coconspirators[1]—all of whom testified about Williamson's participation in the conspiracy. The government also played the recorded conversation between Williamson and Alberty. The district judge, concerned that the audio was of poor quality and difficult to understand, gave Williamson and his counsel an opportunity to redact its less intelligible portions. Williamson's counsel conferred with Williamson, and the court played the entire recording at counsel's request. The jury found Williamson guilty on August 17, 2007; the court sentenced Williamson to life in prison (owing in part to his two prior felony drug convictions) on December 7, 2007; and Williamson timely appealed.

On appeal, Williamson argued that he had a Sixth Amendment right to counsel when the recording was made (because

---

[1]The government's investigation included suspects in the Middle District of North Carolina, the Southern District of Georgia, the District of the Virgin Islands, and the British Virgin Islands. Only six of the other suspects were charged along with Williamson in the Middle District of North Carolina.

he had already been indicted) and that its admission at trial was therefore plain error. In an unpublished, per curiam decision, we agreed with the government's position that it was not plain error and distinguished *Massiah v. United States*, 377 U.S. 201 (1964)[2] and *Brewer v. Williams*, 430 U.S. 387 (1977). We found that the admission of the recording was not plain error because we had previously "held that the Sixth Amendment right to counsel does not attach even after a defendant has been arrested based on the filing of a criminal complaint nor is the right triggered during the period between a defendant's arrest and his arraignment." *United States v. Williamson*, 337 F. App'x 288, 291 (4th Cir. 2009) (citing *United States v. Alvarado*, 440 F.3d 191, 200 (4th Cir. 2006); *United States v. D'Anjou*, 16 F.3d 604, 608 (4th Cir. 1994)). Williamson petitioned the United States Supreme Court for certiorari.

In its brief in the Supreme Court, the government veered from the argument it made in this court and conceded that Williamson's Sixth Amendment right to counsel had attached upon the return of the sealed indictment and that it was plain error to admit the recording. The government maintained, however, that Williamson would "be unable to establish that the Sixth Amendment error prejudiced him or seriously affected the fairness, integrity, or public reputation of judicial proceedings," requirements for noticing plain error. Brief for United States at 7, *Williamson v. United States of America*, 130 S. Ct. 3461 (2010) (No. 09-8915). The Supreme Court then vacated and remanded "for further consideration in light of the position asserted by the Acting Solicitor General in his brief." *Williamson v. United States of America*, 130 S. Ct. 3461 (2010).

---

[2]The *Massiah* Court held that the "petitioner was denied the basic protections of [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206.

Though the parties, on remand in this court, agreed that the admission of the recording violated Williamson's Sixth Amendment right to counsel, they disagreed about whether it satisfied the test for noticing plain error. We did not then resolve that disagreement because we determined that this case also potentially implicated Fifth Amendment issues in that "it involves a lengthy recitation of Appellant's own words, elicited after Appellant had been indicted, by a confidential informant who was cooperating with the Government." *United States v. Williamson*, 447 F. App'x 446, 450 (4th Cir. 2011). We held the Sixth Amendment question in abeyance and instructed the district court to determine whether Williamson's recorded statement was the product of compulsion or coercion and, in doing so, to consider "(1) the degree of police involvement in eliciting Appellant's statement; (2) Alberty's knowledge of the impending criminal prosecutions and his relationship to Appellant; (3) the nature of Alberty's questions and demeanor; and (4) the character of Appellant's statements and responses." *Id.* at 451.

The district court appointed Williamson counsel and held a hearing on the Fifth Amendment issue. The government called two witnesses: a special agent with Homeland Security Investigations, and Alberty (the government informant) to discuss the circumstances surrounding the recorded conversation. Soon after, the district court entered a memorandum opinion finding no Fifth Amendment violations underlying the recorded conversation. *See United States v. Williamson*, No. 1:06cr474, 2011 WL 5836258, at *8 (M.D.N.C. Nov. 21, 2011). The court explained that "the totality of the circumstances surrounding the conversation between Mr. Williamson and Mr. Alberty demonstrates that Mr. Williamson's incriminating statements were voluntary." *Id.* Once again, Williamson appealed the district court's decision.

As Williamson's direct appeal made its way up and down the appellate ladder, Williamson filed in the district court a motion for a new trial, pursuant to Federal Rule of Criminal

Procedure 33, claiming to have discovered new evidence that merited entirely new proceedings.[3] Along with that motion, Williamson requested that the district court appoint additional counsel to pursue the Rule 33 motion. The district court denied the new-trial motion, denied Williamson's motion for appointment of counsel for the Rule 33 proceeding, and denied Williamson's ensuing motion for reconsideration. Williamson appealed those denials. We have consolidated all of Williamson's appeals and now address their various issues.

## II.

We begin with the most enduring issue concerning Williamson's judgment of conviction. Williamson claims, and the government now agrees, that the admission of the recorded statement, made as it was after the grand jury returned a sealed indictment against Williamson, violated his right to counsel. Williamson did not object to the admission of the recording at trial, so our review is for plain error. Because Williamson has failed to meet the stringent requirements to justify reversal for plain error, we affirm on the issue.

Under Federal Rule of Criminal Procedure 52(b) and the plain-error analysis explained by the Supreme Court in *United*

---

[3]Williamson claimed that the United States did not provide, prior to his trial, "exculpatory evidence" in the form of information relating to the testimony of a witness who testified at another trial after Williamson's conviction. In his motion for reconsideration, Williamson expanded his allegations to include statements from other witnesses and a tape-recorded conversation.

Williamson filed his new-trial motion on July 23, 2010, two days after the Supreme Court remanded his appeal to this court, and approximately one year before this court's August 3, 2011, remand to the district court on the Fifth Amendment issue. Little more than one month after we remanded the action, the district court denied Williamson's new-trial motion. And two months after denying that motion, the district court entered its opinion on the Fifth Amendment issue, pursuant to our instructions.

*States v. Olano*, 507 U.S. 725 (1993), an appellate court may correct a forfeited error when: "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines, after examining the particulars of the case, that the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Wilkinson*, 137 F.3d 214, 223 (4th Cir. 1998) (quoting *Olano*, 507 U.S. at 732). "Meeting all four prongs is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

"[A]n error is plain when the law at the time is settled." *United States v. Godwin*, 272 F.3d 659, 679 (4th Cir. 2001). To show that a plain error affected his substantial rights, the accused must demonstrate that "the error actually affected the outcome of the proceedings." *Id.* at 679–80. As a practical matter, this means that the accused "must establish 'that the jury actually convicted' [him] based upon the trial error." *Id.* at 680 (quoting *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998)). "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734. "Where the evidence is overwhelming and a perfect trial would reach the same result, a substantial right is not affected." *Godwin*, 272 F.3d at 680 (citing *United States v. Moore*, 11 F.3d 475, 482 (4th Cir. 1993)).

Even if the accused establishes the first three prongs, he must also demonstrate the error's serious effect on the fairness, integrity, or public reputation of judicial proceedings. "The fourth prong is meant to be applied on a case-specific and fact-intensive basis." *Puckett*, 556 U.S. at 142. A "*per se* approach to plain-error review is flawed." *Id.* Even so, "[i]n cases applying this fourth criterion, [the Supreme Court has] suggested that, in most circumstances, an error that does not affect the jury's verdict does not significantly impugn the 'fairness,' 'integrity,' or 'public reputation' of the judicial

process." *United States v. Marcus*, 130 S. Ct. 2159, 2166 (2010).

The government has conceded that it was plain error to admit the recordings at trial. We find no basis, however, for concluding that this plain error affected Williamson's substantial rights because he has not shown that the error affected the outcome of his trial. Williamson has not established "'that the jury actually convicted' [him] based upon the trial error." *Godwin*, 272 F.3d at 680 (quoting *Hastings*, 134 F.3d at 240). The government presented extensive evidence of Williamson's guilt, independent of the taped recording. One witness, Christopher Swaney, testified to his own extensive dealings with Williamson, which involved ever-increasing quantities of cocaine. Another witness, Glenson Isaac, testified that he sold Williamson ten kilograms of cocaine on one occasion in 2004, and multiple kilograms of cocaine on several other occasions. Michael Sealy testified that he accompanied Williamson to New York to pick up five kilograms of cocaine. Drug Enforcement Administration agent James Cryan corroborated Sealy's testimony with his own contemporaneous surveillance of Williamson. Cryan testified that he watched Williamson, Sealy, and a confidential informant obtain a black duffel bag from the occupant of a white van; take the duffel bag to Sealy's apartment; and leave the apartment to meet with another vehicle at a McDonald's. Shortly thereafter, officers searched the vehicle and Sealy's apartment, where they found eleven kilograms and six-and-a-half kilograms of cocaine, respectively. The search of Sealy's apartment also netted approximately $20,000 in currency. The trial transcripts are overflowing with similar evidence. While the taped conversation was surely damaging, Williamson has not shown that its absence would alter the outcome of his trial. "Where the evidence is overwhelming and a perfect trial would reach the same result, a substantial right is not affected." *Id.* (citing *Moore*, 11 F.3d at 482).[4]

---

[4]Williamson seizes on the government's discussion of the tape recording during closing argument. In evaluating a claim of plain error, however,

Even if we were to find that the error to which Williamson did not object affected Williamson's substantial rights, we could not also say that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Here, the defendant had not been arrested and continued his drug business unabated past the return of the indictment, the government produced at trial overwhelming evidence of his guilt separate and apart from his recorded conversation, and there is nothing that remotely suggests that the government recognized that it was passing any contextually clear Sixth Amendment markers. Under the circumstances, we have no hesitancy in concluding that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. In fact, were this court to seize upon the admission of the recording (which Williamson himself asked the district court to play in its entirety) as an opportunity to reverse Williamson's conviction despite the overwhelming evidence against him, it would do far more to damage the public's perception of judicial proceedings than leaving the conviction in place. *See Johnson v. United States*, 520 U.S. 461, 470 (1997) ("On this record there is no basis for concluding that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings. Indeed, it would be the reversal of a conviction such as this which would have that effect.") (internal quotation marks omitted). Satisfying all four prongs of the plain-error test is difficult, *Puckett*, 556 U.S. at 135, and Williamson has not done so here.

---

we look to the "record in its entirety," and not to discrete portions of it. *United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996). We remain convinced that Williamson has not satisfied his burden under the third prong of the plain-error test. If it were, as Williamson urges, "the Government's burden to establish harmless error beyond a reasonable doubt, our conclusion today might be different." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 367 (5th Cir. 2010).

### III.

Williamson also claims that the recorded statements were the product of compulsion or coercion such that their admission violated the Fifth Amendment. Reviewing the district court's factual findings for clear error and its legal determinations de novo, we find no Fifth Amendment violation, and we affirm.[5]

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. That provision requires that a person's statements, under whatever circumstances they might be made, be "voluntary" to be admissible at trial. *See United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc). Voluntariness depends on whether the defendant's statements were "the product of an essentially free and unconstrained choice by [their] maker" or if, instead, "his will [was] overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); *see also Braxton*, 112 F.3d at 780. In making this determination, courts assess the totality of circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973); *United States v. Wertz*, 625 F.2d 1128, 1133–34 (4th Cir. 1980). "Because the police activity used to elicit an incriminating statement must be coercive before a statement will be held to be involuntary, it is not surprising that 'very few incriminating statements, custodial or otherwise, are held to be involuntary.'" *Braxton*, 112 F.3d at 786 (quoting *United States v. Rutledge*, 900 F.2d 1127, 1129 (7th Cir. 1990)).

In this case, the district court answered these questions by

---

[5]As with the Sixth Amendment *Massiah* issue, counsel did not raise the issue at trial. The government has not claimed that Williamson has forfeited the issue for appeal. Consequently, it is contextually before us on plain-error review. It founders on plain-error review's first prong, and we end our analysis of the issue there.

hearing testimony from two witnesses familiar with the lunch meeting and finding the following facts:

> Mr. Alberty arranged to meet with Mr. Williamson at a restaurant in Greensboro on January 29, 2007. Mr. Alberty and Mr. Williamson had planned to meet in order to set up a subsequent drug deal, and also to discuss concerns about [co-conspirator] Mr. Swaney's arrest and indictment. Though Mr. Alberty agreed to wear a recording device during the meeting, the agents working with Mr. Alberty did not ask him to do so until the day of the meeting. At that time, government agents had not told Mr. Alberty of the sealed indictment (or that Mr. Williamson was named on the indictment), the pending arrest warrant for Mr. Williamson, or their plan to arrest Mr. Williamson after the meeting. The government agents likewise did not instruct Mr. Alberty about how to conduct the conversation or what topics to discuss, nor did they direct him to ask questions at all. According to Mr. Alberty, the only instructions he received were to "put on a wire and have lunch." Mr. Alberty further testified that the conversation was "normal" and did not differ from prior conversations between him and Mr. Williamson. Though they discussed prior drug trafficking activity, Mr. Alberty did not pressure Mr. Williamson to answer questions, and the two of them continued to discuss various matters while ordering and eating lunch. The recording and transcript of conversation manifest no suggestion that Mr. Alberty made any kind of threatening remarks nor intimidated Mr. Williamson in any fashion. In addition, because Mr. Alberty "worked for" Mr. Williamson's "partner," his relationship to Mr. Williamson, while friendly, was that of a subordinate to a superior. Accordingly, it is unlikely that Mr. Alberty had any actual or perceived power over Mr. Williamson's continued presence or

the statements Mr. Williamson made over the course of the conversation.

Mr. Williamson arrived at the restaurant of his own accord and left of his own free will. He was free to leave the conversation with Mr. Alberty at any point. Although unmarked law enforcement vehicles were present near the restaurant to conduct surveillance, no law enforcement officers were present in the restaurant, nor did they seek to apprehend Mr. Williamson as he walked out of the restaurant. At the time of the conversation, therefore, no police presence was visible to Mr. Williamson. Instead, after Mr. Williamson had exited the restaurant parking lot in his vehicle, police officers set up moving surveillance while they awaited the arrival of a marked police car that would conduct a traffic stop. Before that traffic stop could take place, Mr. Williamson evaded the officers and was therefore not arrested that day.

*Williamson*, 2011 WL 5836258, at *1–2 (footnotes and citations omitted).

The district court found, and we agree, that these circumstances offer no hint of coercion. Williamson spoke voluntarily to an associate and subordinate member of his conspiracy over a meal at a public restaurant, and Williamson expressed neither discomfort nor a desire to leave. No law enforcement presence was apparent either inside the restaurant or in the surrounding area, and Williamson "was at liberty to terminate the discussion . . . at any time." *See Braxton*, 112 F.3d at 781–85 (finding no coercion where the one-hour interview took place with others present, and the defendant had agreed to the meeting and could leave at any time). Alberty received no direction from law enforcement about what topics to discuss with Williamson, nor was he directed to question Williamson at all. Indeed, his only instruction was to "put on a

wire and have lunch." And a review of the recorded conversation itself demonstrates that Alberty in no way threatened Williamson or otherwise coerced him into answering questions.

The question of voluntariness is simply whether Williamson's statements were the product of a free and unconstrained choice on his part, or if, instead, his will was overborne and his capacity for self-determination was somehow critically impaired. Practically speaking, this could rarely be the case when the defendant is willingly speaking with a friendly acquaintance over lunch, without the slightest hint that the defendant was intimidated by the atmosphere or his lunch companion. The question is also largely a factual determination, and the evidence here fully supports the district court's decision. As such, we find no Fifth Amendment violation.

## IV.

Rule 33 of the Federal Rules of Criminal Procedure permits a defendant to file a motion for a new trial based on newly discovered evidence within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1).[6] Nearly three

---

[6]Federal Rule of Criminal Procedure 33 provides:

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) Time to File.

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

years after the jury returned a verdict against him, and during the pendency of his direct appeal, Williamson filed a Rule 33 motion for a new trial based on what he claimed was "newly discovered evidence." Williamson sought but was denied court-appointed counsel to pursue the motion. Williamson, who has had court-appointed appellate counsel at every appellate stage along the way, now argues that such Rule 33 motions, made while a direct appeal is pending, are always "critical stages" triggering the Sixth Amendment right to trial counsel, in addition to appellate counsel. We conclude that after an appeal has been filed and the window has closed on the record of conviction, Rule 33 "newly discovered evidence" proceedings in the district court are truly collateral proceedings to which the Sixth Amendment right to counsel does not attach. Finding no Sixth Amendment violation, we affirm the district court's decision.

A criminal defendant's Sixth Amendment right to counsel attaches after judicial proceedings have been initiated against him, *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991), and that right applies at all critical stages, *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 (2008). "[C]ounsel is . . . required in the hiatus between the termination of trial and the beginning of an appeal," *Nelson v. Peyton*, 415 F.2d 1154, 1157 (4th Cir. 1969), and through the defendant's first appeal of right, *see Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Ross v. Moffitt*, 417 U.S. 600, 607 (1974), but once the direct appeal has been decided, the Sixth Amendment right to counsel comes to an end, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."); *Kitchen v. United States*, 227 F.3d 1014, 1018 (7th Cir. 2000) ("[O]nce the direct appeal has been decided, the right to counsel no longer applies." (citing *Finley*, 481 U.S. at 557)). As a corollary, a petitioner has no Sixth Amendment right to counsel in order to mount a collateral challenge to his conviction. *See, e.g.*, *Kitchen*, 227 F.3d at 1019 ("[I]t is well established that there is no constitutional right to counsel in collateral pro-

ceedings." (citing *Finley*, 481 U.S. at 557)). In applying these principles, circuit courts have held that a new-trial motion filed after the trial but before the appeal is a critical stage with the attendant Sixth Amendment right to counsel, *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) ("Every federal circuit court to address the question of whether the post-trial, pre-appeal time period for making a motion for new trial is a critical stage has concluded that it is."), and that a new-trial motion filed after the direct appeal is not a critical stage, but rather a collateral proceeding with no attendant Sixth Amendment right to counsel, *see United States v. Berger*, 375 F.3d 1223, 1226 (11th Cir. 2004); *Trenkler v. United States*, 268 F.3d 16, 20 (1st Cir. 2001) (noting that post-appeal Rule 33 motions are collateral and that a criminal defendant has no Sixth Amendment right to an attorney in such proceedings); *Johnson v. United States*, 246 F.3d 655, 658 (6th Cir. 2001) ("[A] delayed Rule 33 motion is a collateral challenge separate from the direct appeal."); *United States v. Woods*, 169 F.3d 1077, 1078 (7th Cir. 1999) ("When made following the outcome of a direct appeal, a Rule 33 motion plainly is collateral . . . ."); *see also United States v. Prescott*, 221 F.3d 686, 687 (4th Cir. 2000) (holding that the one-year limitations period for filing a § 2255 motion to vacate ran from the resolution of the direct appeal of the judgment of conviction, and not from the resolution of the Rule 33 motion made after the defendant appealed his conviction); *United States v. Williams*, No. 97-6517, 1998 WL 786200 (4th Cir. Nov. 12, 1998).[7]

---

[7]The government argues that *Williams* is "very close authority." In *Williams*, however, the district court found that the defendant had no right to counsel for his Rule 33 motion only after considering "the motion as one . . . with no appeal pending." *Williams*, 1998 WL 786200, at *1; *see also id.* at *2 ("[A]s we have noted, the right to counsel extends only through the first appeal as of right, and it does not extend to collateral review. At the time Williams's new trial motion was heard, his direct appeal had been decided and his conviction and sentence had been affirmed."). In this case, Williamson filed his Rule 33 motion shortly after the Supreme Court remanded the case to the Fourth Circuit, i.e., while the direct appeal was still pending. Thus, *Williams* is factually distinct from this case and stands only for the proposition that there is no right to counsel for Rule 33 motions after the direct appeal is resolved.

With those precepts in mind, we turn to the precise question presented here: whether there is a Sixth Amendment right to counsel to pursue a Rule 33 motion based on newly discovered evidence filed more than fourteen days (formerly ten days) after the district court enters the judgment of conviction. Because we find such a motion to be truly collateral to the judgment of conviction and the appeal, we also find no Sixth Amendment right to counsel.

Our conclusion that such motions are, for all intents and purposes, collateral attacks finds support in the caselaw in varying contexts and the Federal Rules of Appellate Procedure. In *Johnson v. United States*, for example, the Sixth Circuit confronted the question of whether "a timely motion seeking a new trial under [Rule 33] serves to render a judgment of conviction as not final for purposes of the running of the one-year statute of limitations under 28 U.S.C. § 2255." 246 F.3d at 657. The *Johnson* court found that it did not because it concluded that a Rule 33 motion filed after the short post-judgment period for seeking appellate review (specified by Federal Rule of Appellate Procedure 4(b)) was a collateral challenge and distinct from the direct appeal. In *Trenkler v. United States*, the First Circuit considered the same question and reached a similar conclusion: "a Rule 33 motion for a new trial is not part of the 'direct appeal' from a judgment of conviction unless incorporated into that appeal by virtue of Rule 4(b)." 268 F.3d at 22. Likewise, the Eleventh Circuit has held that a new-trial motion filed while a direct appeal is pending is not part of the direct appeal, but a collateral challenge to conviction. *See Barnes v. United States*, 437 F.3d 1074, 1079 (11th Cir. 2006).

In each of these cases, the court considered the nature of a direct appeal, the interplay of the Federal Rules of Appellate Procedure, and a Rule 33 new-trial motion based on newly discovered evidence. As the *Trenkler* court explained:

Rule 4(b)(1) [of the Federal Rules of Appellate Procedure] provides that a defendant's notice of appeal

in a criminal case normally must be filed within ten days of the entry of judgment. Subsection 4(b)(3)(A) modifies that general rule, stating that if a defendant files a Rule 33 motion within the ten day period, the notice of appeal need only be filed within ten days of the entry of the order disposing of that motion. Subsection 4(b)(3)(C) then provides that "[a] valid notice of appeal is effective—without amend-ment—to appeal from an order disposing of" a Rule 33 motion filed in accordance with subsection (A). Rule 4(b) thus effectively incorporates Rule 33 motions into the process of direct appeal, but only when they are filed within ten days of entry of the judgment of conviction. The lack of any analogous provisions to so incorporate motions based on newly discovered evidence and filed outside the ten-day period strongly suggests that such motions are not properly considered part of the direct appeal.

*Trenkler*, 268 F.3d at 21.[8]

If a motion is not part of the direct appeal, then the motion is "collateral" in the usual sense of that word. *See Black's Law Dictionary* 298 (9th ed. 2009) (defining "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal").[9] Petitioners have no Sixth Amendment right to counsel for collateral proceedings. Accordingly, we find that Williamson had no Sixth Amendment right to counsel to pur-

---

[8]The ten-day time periods previously specified by Federal Rule of Appellate Procedure 4 are now fourteen-day periods.

[9]Nor do we believe our ability to consolidate a Rule 33 motion with the direct appeal, as we have done here, makes it any less collateral. Our authority to consolidate appeals is constrained only by the requirement that "the parties have filed separate timely notices of appeal." Fed. R. App. P. 3(b)(2). Consequently, any number of diverse and collateral matters may be consolidated for appeal.

sue his Rule 33 motion in the trial court, made as it was nearly three years after he noticed his appeal.[10]

Williamson relies on *Kitchen v. United States* to support his argument that Rule 33 newly discovered evidence motions made while an appeal is pending are always critical stages triggering the Sixth Amendment right to counsel. In *Kitchen*, the Court of Appeals for the Seventh Circuit held that a defendant had a right to counsel for a Rule 33 motion filed while his direct appeal was pending, essentially *because* the direct appeal was pending:

> The timing of Kitchen's motion for a new trial is an important factor supporting his right to counsel in prosecuting the motion . . . . His Rule 33 motion came well after the initiation of criminal proceedings (when his right to counsel attached) and well before the decision of his direct appeal (when his right to counsel terminated).

*Kitchen*, 227 F.3d at 1018 (citations omitted). The *Kitchen* court rejected as "wide of the mark" the government's efforts "to label a pre-appeal motion for a new trial as a 'collateral

---

[10]Williamson filed his new-trial motion on July 23, 2010, shortly after the Supreme Court remanded the direct appeal to this court. On August 3, 2011, before the district court had decided the new-trial motion, this court remanded only the Fifth Amendment issue. "[I]t is indisputable that a lower court generally is 'bound to carry the mandate of the upper court into execution . . . .'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). "[W]hen this court remands for further proceedings, a district court must, except in rare circumstances, 'implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces.'" *Id.* at 66 (alterations in original) (quoting *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)) (internal quotation marks omitted). Thus, even though Williamson's new-trial motion and the remanded appeal sat concurrently in the district court, we remanded the direct appeal on limited grounds with circumscribed directions, and the new-trial motion remained truly collateral to the direct appeal.

attack.'" *Id.* at 1019. *Kitchen* is, indeed, countervailing authority to our decision here. However, we have viewed Rule 33 motions filed during the pendency of an appeal as collateral in other contexts, *see Prescott*, 221 F.3d at 687, and we continue to hold that view here for the reasons we have stated. Accordingly, we find no violation of Williamson's Sixth Amendment right to counsel.[11]

## V.

For the reasons stated, the judgment of conviction and the denial of the motion for new trial are affirmed.[12]

*AFFIRMED*

---

[11]Under 18 U.S.C. § 3006A(a)(2), the district court may appoint counsel when it "determines that the interests of justice so require." In cases involving new-trial motions that *may* require counsel, we see no reason why the district court cannot appoint counsel under § 3006A and the court of appeals cannot review any failure to do so for abuse of discretion. *See Bowman v. White*, 388 F.2d 756, 761 (4th Cir. 1968) (discussing the district court's discretion). On appeal, however, Williamson argues that he had a Sixth Amendment right to counsel, so we find it unnecessary to address further the district court's discretion to appoint counsel under § 3006A.

[12]We have carefully examined the other issues Williamson raises on appeal and find that they lack merit.