PRESENT:  All the Justices

DIRECTOR OF THE DEPARTMENT
OF CORRECTIONS

                                                                    OPINION BY
v.  Record No. 141788                          JUSTICE D. ARTHUR KELSEY
                                                                December 10, 2015
DOUGLAS TODD KOZICH


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Lorraine Nordlund, Judge

The circuit court issued a writ of habeas corpus to Douglas Todd Kozich, finding that his

trial counsel had violated the Sixth Amendment guarantee of effective legal representation by not

timely filing, and obtaining a ruling on, a motion seeking a reconsideration of Kozich's sentence.

Disagreeing with several aspects of the court's reasoning, we nonetheless affirm the judgment

granting the writ in this case on alternative grounds legally supported by the habeas court's

factual findings.

I.

In 2013, Kozich pled guilty to one count of grand larceny and two counts of obtaining

money by false pretenses.  After the trial court approved the plea, the court entered an order

finding him guilty of all charges, ordered the presentation of a presentence report, and scheduled

a hearing to determine the sentences.

At the sentencing hearing on June 7, 2013, the trial court stated that it had reviewed the

presentence report and Kozich's sentencing memorandum and considered the applicable

sentencing guidelines.[1]  Kozich's criminal record included about fourteen prior felony

_____

[1] Kozich's sentencing memorandum summarized his argument and provided an attached
letter from a substance-abuse professional.  These documents, along with the presentence report,
were sealed by the trial court.  To the extent that we mention facts found only in the sealed

convictions, more than fifteen misdemeanor convictions, and several probation violations. Kozich's sentencing memorandum informed the court that Kozich's criminal record was "entirely the product of his addictions" to various drugs that he had been using "for three decades." Counsel called attention to the presentence report, which noted Kozich's use of LSD, cocaine, marijuana, heroin, and prescription opiate medications (morphine and Vicodin). In that report, Kozich admitted that he committed the crimes for which he was being sentenced while under the influence of cocaine and heroin.

Relying on these facts, Kozich's counsel pled for mercy at the sentencing hearing, pointing out that Kozich's criminal behavior was "the direct proximate result of addiction and mental health problems." Counsel directed the court's attention to counsel's sentencing memorandum provided to the court. In it, counsel requested that Kozich be placed in "Crossroads or some other residential treatment program" and given a suspended sentence. The memorandum also informed the court that Kozich had attended a mental illness and substance abuse program operated by Pathway Homes. He "met weekly with a licensed counselor and was supervised by a licensed psychologist who served as a house volunteer." Kozich also participated in Alcoholics Anonymous and Narcotics Anonymous meetings and, at the time of sentencing, was enrolled in several substance abuse programs.

Kozich's counsel implored the court, "I would suggest to the Court that you strongly consider the letter that's attached to the sentencing memorandum." That letter, written by the mental health manager of the Program for Assertive Community Treatment and South County Intensive Community Treatment Team, recommended "an inpatient substance abuse treatment program" like "Crossroads" and suggested that the court mandate "treatment to one of those

record, we unseal only those specific facts, finding them relevant to our decision in this case. The remainder of the previously sealed record remains sealed.

2

programs instead of jail time." After counsel's argument, Kozich used his allocution to make an impassioned request for drug treatment and psychological counseling rather than imprisonment.

In its ruling, the court stated to Kozich that "putting you in programs doesn't work because even when you're given the opportunity of the programs, even when you're given the opportunity of probation, you can't help yourself. And so it's come to the point where I have to protect the public from you." The court then concluded, "What I'm going to do is this[:] I'm going to impose a sentence here today which I think is an appropriate sentence in the absence of an actual program for me to look at and determine whether or not it's appropriate." The court added that it would "give leave" to Kozich's counsel to "file a motion to reconsider" if he later wished to produce additional information on treatment programs. The court ended the hearing by issuing two-year active sentences, running consecutively, for each of the three offenses. "That is what I think is the appropriate sentence," the court announced.

The court entered three sentencing orders more than two weeks later, on June 24, 2013, each of which imposed a two-year active sentence on the respective convictions. The orders remanded Kozich to the custody of the sheriff for incarceration by the Virginia Department of Corrections and directed Kozich's court-appointed counsel to be paid the statutory attorney fee. Nothing in the written orders granted leave for further motions, stayed the proceedings for any reason, or made any suggestion that the court intended to take the case under advisement. No appeal followed.

On September 27, 2013, more than three months after entry of the final sentencing orders, Kozich's counsel filed a motion to reconsider the sentence. By this time, Kozich was incarcerated in a state penitentiary. On November 13, 2013, the court denied the motion to reconsider because "the Court no longer ha[d] jurisdiction over this case." See generally Code

3

§ 19.2-303 (authorizing the power to "suspend or otherwise modify" the sentences of felons who have "not actually been transferred to a receiving unit of the Department [of Corrections]" if the court finds that doing so would be "compatible with the public interest and there are circumstances in mitigation of the offense").

In May 2014, Kozich filed a petition seeking a writ of habeas corpus and naming the Virginia Department of Corrections as respondent. The case was assigned to the same judge who had previously presided over Kozich's sentencing hearing. At an evidentiary hearing on the petition, Kozich's habeas counsel contended that Kozich's trial attorney had provided ineffective assistance of counsel by failing to present a specific drug-treatment plan at the sentencing hearing as an alternative to incarceration. Habeas counsel also argued that trial counsel had failed to file a timely motion to reconsider the sentence.

In reply, the Commonwealth argued that Kozich's trial counsel did not breach his duty of effective assistance of counsel by not presenting at the sentencing hearing a detailed plan for drug treatment in lieu of incarceration — in addition to his argument, sentencing memorandum, its supporting letter from a treatment professional, and Kozich's personal allocution. The Commonwealth also argued that the Sixth Amendment right to counsel does not extend to post-judgment motions to reconsider a criminal sentence.

The habeas court ruled for the Commonwealth on the first claim, which focused on the absence of a specific plan for treatment at the time of sentencing.[2] The judge explained: "As to whether or not [trial counsel] was deficient in his performance, I do not find that at the time of

_____

[2] Kozich did not assert an assignment of cross-error challenging this ruling or otherwise argue on appeal that it should be overturned. See Oral Argument Audio at 16:05 to 16:38 (concession by counsel that Kozich did not cross-appeal this finding because he "did not think it was necessary"); cf. id. at 3:54 to 4:31, 10:10 to 11:14 (affirmations by both parties that the trial court did not find ineffective assistance of Kozich's counsel as of the date of the sentencing hearing at which the trial court imposed the original six-year term of incarceration).

4

the original sentencing that he was deficient for failing to bring me that plan, and the reason is because the [presentence report] showed a person who had really not been taking opportunities seriously." She continued, "I don't find that . . . in and of itself was deficient." Accord J.A. at 73 ("I don't think that's ineffective assistance. . . . I don't expect attorneys to read my mind" because "[e]very single [judge] is different").

On the second claim, alleging ineffectiveness due to counsel's failure to file a timely motion for reconsideration, the habeas court ruled against the Commonwealth. On this issue, the judge noted, "I find myself benefitting from knowing what was going on in my head." Based upon that knowledge and her personal practice of "rarely issu[ing] an invitation to counsel to submit something more," the judge stated that the written sentencing orders were not truly final orders. It was "within my mind," the judge revealed, "that I [was] not finally sentencing [Kozich]." If she does not "invite" more from a party, she explained, "it's the end, period," and, in her mind, the order is actually final. Here, she intended only to "impose a sentence here today" with the resulting effect of "continuing" the case as "an open sentencing." On that reasoning, she found that Kozich "had a constitutional right to counsel at the time of the conduct in question, because it occurred during the time that the overall sentencing process was still in progress."

That finding left two issues to be resolved: Was Kozich's trial counsel ineffective by not timely filing, and obtaining a ruling on, a motion to reconsider the sentences, and, if so, was Kozich prejudiced? The judge answered both questions in the affirmative. The failure to file a timely motion to reconsider and to ensure that the court had an opportunity to rule on it, the judge held, constituted ineffective assistance. "As far as the prejudice is concerned," the judge reasoned, "heroin addicts" show a higher propensity for favorable treatment outcomes than other

5

drug addicts. If the motion to reconsider had been timely filed, the judge stated she "would have placed Mr. Kozich in a program with a sufficient aftercare component. I know that that is what I was considering. I know that that was what I was intending. . . . I had every intention of putting this gentleman in a program and giving him a chance." The court issued the writ of habeas corpus based upon "the reasons stated by the court" from the bench.

The court thereafter vacated the sentencing orders entered on June 24, 2013, which imposed six years of active incarceration, and entered new sentencing orders on January 9, 2015. The amended sentencing orders imposed three consecutive two-year terms of incarceration, suspending one year of each sentence, resulting in a total of three years of active incarceration. Each order noted that Kozich "is to enter into and successfully complete the Crossroads Long Term Residential Program . . . to include the aftercare program as a condition in place of serving the one (1) year of incarceration." A footnote on each amended sentencing order further stated, "Serve sentence in Crossroads Long Term Residential Program," which is a private, drug rehabilitation program.[3]

II.

On appeal, the Commonwealth argues that the habeas court's *sui generis* "open sentencing" interpretation of its sentencing orders has no support in Virginia law. Under settled principles, the Commonwealth contends, the sentencing orders were final, appealable orders. Because the Sixth Amendment right to counsel has never been recognized for the assertion of a

---

[3] By letter, attorneys for the Commonwealth and the Department of Corrections informed the trial court that it had no authority to order a prisoner to serve his penitentiary sentence (which, for Kozich, amounted to three years of active incarceration) in an "unsecured facility" operated by a private entity. They later filed legal memoranda inviting the court to "effectuate" its apparent intent by amending the sentencing orders to require Kozich to complete the residential drug treatment program "as a condition of his suspended term of incarceration and active probation." The record before us does not show any response by the trial court on this issue.

motion to reconsider a sentence after a final, appealable order in a criminal case has been

entered, the Commonwealth concludes that we should vacate the issuance of the writ. We agree

with much of the Commonwealth's reasoning, but disagree that it wholly undermines the legal

basis for issuing the writ of habeas corpus in this case.

### A. THE FINALITY OF THE SENTENCING ORDERS

Virginia law recognizes a rebuttable presumption that "trial courts speak only through

their written orders." McMillion v. Dryvit Sys., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001);

see also Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979). We have

emphasized this point on "numerous occasions" in various contexts. McMillion, 262 Va. at 469,

552 S.E.2d at 367. The subjective intentions of a judge upon entering a written order cannot

change its character or legal efficacy. If the rule were otherwise, litigants would never know the

true scope of their rights, and appellate courts would never know the true grounds for lower

courts' decisions.

Tracking the form order requirements of Code § 19.2-307 and Rule 3A:22 (Form 10), the

sentencing orders in this case recited that Kozich was "found guilty" and that:

- The court had reviewed the "sentencing guidelines and the guideline worksheets."

- Kozich was allowed to allocute prior to the court's "pronouncing the sentence" and offered an opportunity to give "any reason why judgment should not be pronounced."

- Kozich was "**SENTENCED**" to two-year penitentiary terms for each of the three offenses, with credit for time served, and placed upon his release in "post release supervision."

- Kozich was ordered to pay costs and, where applicable, restitution.

- Kozich's counsel was entitled to his court-appointed attorney fee pursuant to Code § 19.2-163, a statute authorizing payment pursuant to a timely request after "the completion of all proceedings in that court."

7

J.A. at 10-15 (capitalization and bold in original) (quoting Code § 19.2-163). The orders conclude by directing that Kozich be "remanded" to the custody of the sheriff.

We concede that, in the occasional case, the distinction between an interlocutory and a final order sometimes involves an imprecise exercise in judicial line-drawing. "It is not always easy to determine on which side of the line a case falls." Brooks v. Roanoke Cty. Sanitation Auth., 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960). We face no such difficulty here. In this case, the trial court entered sentencing orders that were final, appealable orders in every respect. No provision of the orders suspended the execution of the court's judgment, stayed its enforcement, continued the case for further proceedings, or in any way suggested that the orders were non-appealable, non-final orders. In short, nothing "appears upon the face of the judgment[s]" stating "that further action in the cause is necessary to give completely the relief contemplated by the court." Turner v. Holloway, 146 Va. 827, 832, 132 S.E. 685, 686 (1926) (citation omitted). The habeas court erred, therefore, in interpreting these orders as interlocutory decrees putting into motion a "continuing" and "open sentencing" process.

### B.  SIXTH AMENDMENT RIGHT TO COUNSEL TO PURSUE MOTIONS TO RECONSIDER SENTENCES AFTER ENTRY OF FINAL JUDGMENT

The Sixth Amendment to the U.S. Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to Assistance of Counsel for his defense." U.S. Const. amend. VI. [4]  As a general rule, the entry of a final judgment adjudicating guilt and imposing a sentence marks the end of a criminal prosecution. [5]  No matter what timeline

---

[4] Kozich's petition for a writ of habeas corpus claimed only a violation of the Sixth Amendment right to counsel in criminal cases. See generally Scott v. United States, 473 F.3d 1262, 1264 (8th Cir. 2007) (refusing to address a putative due process right to counsel when the arguments on brief relied solely on a Sixth Amendment basis).

[5] A few excursions beyond this general line of demarcation, however, have been judicially accepted. One recognizes a right to counsel — based not on the Sixth Amendment, but

8

milestones presumptively trigger or extinguish the Sixth Amendment right to counsel, however, the right applies only to "critical stages" of a criminal prosecution. <u>Rothgery v. Gillespie Cty.</u>, 554 U.S. 191, 212 n.16 (2008). While there is no "comprehensive and final one-line definition of 'critical stage,'" <u>Van v. Jones</u>, 475 F.3d 292, 312 (6th Cir. 2007), the analysis usually turns on the likelihood of "substantial prejudice to defendant's rights" during the "particular confrontation" and "the ability of counsel to help avoid that prejudice," <u>United States v. Wade</u>, 388 U.S. 218, 227 (1967); <u>see also</u> <u>Coleman v. Alabama</u>, 399 U.S. 1, 7 (1970).

These distinctions are important given that "the right to effective assistance of counsel is dependent on the right to counsel itself." <u>Howard v. Warden</u>, 232 Va. 16, 19, 348 S.E.2d 211, 213 (1986) (alteration omitted) (quoting <u>Evitts v. Lucey</u>, 469 U.S. 387, 397 n.7 (1985)); <u>see also</u> <u>Wainwright v. Torna</u>, 455 U.S. 586, 587 (1982) (holding that the defendant "could not be deprived of the effective assistance of counsel" due to counsel's "failure to file the application timely" because the defendant "had no constitutional right to counsel"); <u>United States v. Hamid</u>, 461 A.2d 1043, 1044 (D.C. 1983) (holding that "the Sixth Amendment right to the effective assistance of counsel does not apply to the post-conviction process in seeking a reduction of sentence," and thus, the defendant could not have been "deprived of effective assistance of counsel").

In the context of the Sixth Amendment right to counsel, the consensus view is that a motion to reduce a criminal sentence — no matter the procedural vehicle used to assert it — is

_____

on due process and equal protection principles — for purposes of filing the first direct appeal of right from a final order. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 393-94 (1985); <u>see also</u> <u>United States v. Palomo</u>, 80 F.3d 138, 141 (5th Cir. 1996) (explaining that the "right to counsel on direct appeal as of right stems from due process and equal protection interests," not the Sixth Amendment). But even that right to counsel does not extend to a second appeal to a higher appellate court, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987), or to purely collateral attacks, including state habeas corpus actions, <u>Howard v. Warden</u>, 232 Va. 16, 19, 348 S.E.2d 211, 213 (1986).

not a critical stage of a "trial-related proceeding" when it occurs "after judgment has been entered and a sentence imposed." United States v. Palomo, 80 F.3d 138, 142 (5th Cir. 1996) (applying this principle to motions for reduction of a sentence previously imposed by the court, filed pursuant to Federal Rule of Criminal Procedure 35(b)). As a matter of law, "no Sixth Amendment right to counsel attaches at this stage." Id.

From this perspective, "[t]he right to request a reduction in sentence is not a right of sufficient substance to trigger the Sixth Amendment." Hamid, 461 A.2d at 1044. Thus, the "Sixth Amendment right to the effective assistance of counsel does not apply to the post-conviction process in seeking a reduction of sentence." Id.; see also 6 Wayne R. LaFave et al., Criminal Procedure § 26.4(e), at 765 (3d ed. 2007) ("Post-trial proceedings to reduce a sentence . . . are not a 'critical stage' of the 'criminal prosecution' triggering the sixth amendment right to counsel.").[6]

---

[6] See, e.g., United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (per curiam) (collecting cases recognizing no constitutional right to counsel for sentence-reduction motions filed after final judgment); United States v. Harris, 568 F.3d 666, 669 (8th Cir. 2009) (per curiam) (finding no Sixth Amendment right to counsel "beyond the first appeal" and collecting cases holding that "there is no constitutional right to appointed counsel in sentence modification proceedings under [18 U.S.C.] § 3582(c)"); United States v. Brown, 565 F.3d 1093, 1094 (8th Cir. 2009) (per curiam) (same); United States v. Tidwell, 178 F.3d 946, 949 (7th Cir. 1999) (holding that a "motion to reduce a sentence is largely a matter of discretion" and the district judge "can appoint counsel for a movant, but need not do so"); United States v. Townsend, 98 F.3d 510, 513 (9th Cir. 1996) (per curiam) (finding no right to counsel because the defendant's "conviction is final" after defendant "appealed from neither his conviction nor his sentence" and holding that his subsequent "attempt to characterize his [18 U.S.C.] § 3582(c) motion as a means for resentencing, bringing with it all of the rights that attach to the original sentencing, fails"); United States v. Whitebird, 55 F.3d 1007, 1011 (5th Cir. 1995) (rejecting an argument for Sixth Amendment right to counsel for a post-judgment motion seeking a sentence reduction); United States v. Nevarez-Diaz, 648 F. Supp. 1226, 1230-31 (N.D. Ind. 1986) (holding that a motion to reduce a sentence under Rule 52(b) "is a post-trial proceeding and, logically, because it is not part of the criminal prosecution, it is outside the scope of the Sixth Amendment"); see also Scott, 473 F.3d at 1263-64 (noting that "the Sixth Amendment's guarantee of the right to counsel [applies] to trial and critical pre-trial stages" but that "a right to effective post-trial or appellate counsel is analyzed under the Due Process Clause").

We find similar supporting precedent from the United States Court of Appeals for the Fourth Circuit. See United States v. Taylor, 414 F.3d 528, 536 (4th Cir. 2005) (noting that a motion to reduce a sentence under Rule 35(b) is not a "trial-related proceeding and, therefore, the Sixth Amendment cannot serve as a source of [a defendant's] claimed right to counsel"); United States v. Legree, 205 F.3d 724, 729 (4th Cir. 2000) (rejecting a defendant's argument that the trial court "denied him due process by not . . . appointing counsel to represent him on the motion for reduction of sentence").[7]

This approach is consistent with our own practice. In a long series of unpublished orders, we have held that no Sixth Amendment right to counsel applies to motions to reconsider sentences after the entry of final judgment.[8] The United States District Courts in Virginia,

---

[7] We acknowledge Kozich's citations to United States v. Williamson, 706 F.3d 405 (4th Cir. 2013), and Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969). In Williamson, the Fourth Circuit held that there is no Sixth Amendment right to counsel to file a collateral motion under Federal Rule of Criminal Procedure 33 based on newly discovered evidence. 706 F.3d at 415. In Nelson, the Fourth Circuit held that, during the "hiatus" between the conviction and the deadline for appeal, a defendant has a constitutional right to be informed by counsel "that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated." 415 F.2d at 1157. Neither Williamson nor Nelson, however, specifically addresses a post-judgment motion to reconsider a criminal sentence.

[8] See, e.g., Compton v. Clarke, No. 141747 (Aug. 4, 2015); Myrick v. Clarke, No. 141233 (Jan. 26, 2015); Stimon v. Clarke, No. 140148 (Sept. 12, 2014); McConnell v. Clarke, No. 140167 (July 10, 2014); Wilson v. Clarke, No. 140231 (July 7, 2014); Farris v. Warden, No. 131850 (June 26, 2014); Burrell v. Director of the Dep't of Corrs., No. 131561 (Apr. 2, 2014); Moody v. Director of the Dep't of Corrs., No. 130372 (Dec. 3, 2013); Walker v. Director of the Dep't of Corrs., No. 120890 (Oct. 12, 2012); Watkins v. Director of the Dep't of Corrs., No. 111749 (Apr. 4, 2012); Ezefili v. Director of the Dep't of Corrs., No. 111695 (Apr. 3, 2012); Hinton v. Warden, No. 111756 (Mar. 28, 2012); Broderick v. Director of the Dep't of Corrs., No. 111630 (Jan. 17, 2012); Alvarado v. Director of the Dep't of Corrs., No. 111049 (Dec. 1, 2011); Gunter v. Director of the Dep't of Corrs., No. 110984 (Sept. 29, 2011); Vencill v. Warden, No. 101019 (Jan. 13, 2011); Hayes v. Director of the Dep't of Corrs., No. 101180 (Dec. 15, 2010); Staubs v. Director of the Dep't of Corrs., No. 100986 (Dec. 14, 2010); Johnson v. Director of the Dep't of Corrs., No. 101391 (Dec. 6, 2010); Patten v. Warden, No. 091924 (Apr. 15, 2010); Minor v. Director of the Dep't of Corrs., No. 092284 (Mar. 12, 2010); Hicks v. Director of the Dep't of Corrs., No. 091452 (Feb. 24, 2010); Braden v. Warden, No. 090900 (Feb. 9, 2010); Cockrell v. Director of the Dep't of Corrs., No. 090370 (Sept. 2, 2009); Tinsley v. Director of the

reviewing our decisions in the federal habeas context, have found them to be reasonable applications of clearly established federal law. See, e.g., Broderick v. Clarke, No. 7:12-cv-00064, 2012 U.S. Dist. LEXIS 170905, at *16 (W.D. Va. Dec. 3, 2012) ("[T]he Supreme Court of Virginia's adjudication of these claims is neither contrary to, or an unreasonable application of, clearly established federal law.").[9] Given the absence of any binding authority to the contrary, we think it unwise to make an abrupt change in our jurisprudence on this issue.

---

Dep't of Corrs., No. 090160 (July 2, 2009); Hickey v. Director of the Dep't of Corrs., No. 082178 (June 24, 2009); Wyatt v. Superintendent of the Riverside Regional Jail, No. 081500 (Jan. 22, 2009); Ingram v. Warden, No. 081297 (Dec. 22, 2008); Lee v. Director of the Dep't of Corrs., No. 080743 (Oct. 23, 2008); Shendock v. Warden, No. 080074 (July 14, 2008); Brooks v. Director of the Dep't of Corrs., No. 070285 (June 26, 2007); Fisher v. Director of the Dep't of Corrs., No. 070171 (June 26, 2007); Talbert v. Warden, No. 062572 (June 22, 2007); Hooks v. Director of the Dep't of Corrs., No. 061344 (Jan. 12, 2007); Cain v. Director of the Dep't of Corrs., No. 060637 (Aug. 28, 2006); Talbott v. Director of the Dep't of Corrs., No. 060188 (July 3, 2006); Balentine v. Warden, No. 052486 (May 2, 2006); Cerato v. Warden, No. 040572 (Aug. 31, 2004); Taylor v. Director of the Dep't of Corrs., No. 031675 (Jan. 13, 2004); Kovacs v. Warden, No. 031257 (Nov. 25, 2003); Smith v. Director of the Dep't of Corrs., No. 030144 (Oct. 6, 2003); James v. Director of the Dep't of Corrs., No. 030707 (Oct. 3, 2003); Mills v. Warden, No. 012592 (Jan. 16, 2003).

[9] See also Walker v. Clarke, No. 2:12cv424, 2013 U.S. Dist. LEXIS 117497, at *13-14 (E.D. Va. July 26, 2013) (stating that this Court's holding that "a motion to reconsider sentencing is not an integral part of the criminal justice system" and that "no right to counsel exists" was "a fair application of federal law, and a reasonable application of the United States Supreme Court's precedent"); Hinton v. Pruett, No. 3:12cv524-HEH, 2013 U.S. Dist. LEXIS 88236, at *21 n.11 (E.D. Va. June 21, 2013) (finding "no unreasonable application of law or determination of facts" in this Court's finding that petitioner had no right to counsel for a motion to modify his sentence); Watkins v. Director, No. 7:12cv00255, 2013 U.S. Dist. LEXIS 558, at *10 (W.D. Va. Jan. 3, 2013) (noting that "[i]nasmuch as a motion to reconsider [petitioner's] sentence was not an 'integral part of the system for finally adjudicating [his] guilt or innocence,' . . . the state court's adjudication of [petitioner's] claim was not contrary to, or an unreasonable application of, clearly established federal law" (citations omitted)); Tinsley v. Johnson, No. 7:09-cv-00407, 2010 U.S. Dist. LEXIS 76116, at *16 (W.D. Va. July 28, 2010) (finding that "because 'a motion to reconsider is not an integral part of the system for finally adjudicating the guilt or innocence of a defendant,'" this Court's determination that the petitioner "did not state a constitutional claim of ineffective assistance was not contrary to, or an unreasonable application of, clearly established federal law" (alterations and citation omitted)); Talbott v. Johnson, No. 7:06-cv-00633, 2007 U.S. Dist. LEXIS 23703, at *5-6 (W.D. Va. Mar. 30, 2007) (stating that this Court had "reasonably applied" Evitts in holding that no right to counsel applied to a motion to reconsider a criminal sentence).

The habeas court in this case attempted to sideline this limiting principle by denuding Kozich's sentencing orders of their finality based entirely upon the subjective intentions of the sentencing judge. Under this view, the finality of the court's judgment turned on the sentencing judge's personal view that "heroin addicts" (unlike other drug addicts) are typically "smart enough to be able to remove themselves from th[e] vicious cycle of addiction." J.A. at 117. The implication seemed to be that the judge welcomed motions to reconsider filed by heroin addicts while treating as unwelcome motions to reconsider asserted by other drug addicts. This problematic view raises serious questions.[10] Suffice it to say, it has no place in determining whether a final sentence order is truly final for purpose of demarcating the boundaries of the Sixth Amendment right to counsel.

### C. INEFFECTIVE ASSISTANCE PRIOR TO ENTRY OF THE FINAL SENTENCING ORDERS

Though Kozich disagrees with much of this reasoning, his argument on appeal does not ultimately hinge on this disagreement. Rather, Kozich contends that we should nonetheless affirm the issuance of the writ of habeas corpus on the narrower ground that his trial counsel provided ineffective assistance *after* the sentencing hearing but *prior* to the entry of the final judgment. During this two-and-a-half week period, Kozich argues, his trial counsel violated the Sixth Amendment by not filing a timely motion to reconsider after the trial judge had specifically invited him to do so and by not taking any action to obtain a ruling on the motion prior to the

---

[10] Putting aside whether such an overgeneralization should be a proper basis for treating drug defendants differently, the trial court's remarks overlooked the fact that Kozich also abused LSD, cocaine, marijuana, and prescription opiate medications (morphine and Vicodin), as well as the fact that Kozich had committed his most recent crimes while under the influence of both heroin and cocaine.

13

entry of final judgment.[11]  Had the motion been timely filed, Kozich concludes, the trial judge would have entered entirely different final sentencing orders.

Kozich's argument presupposes that a motion to reconsider a sentence, even in the interim period between the oral pronouncement of the sentence and the entry of a written final order, constitutes a critical stage of his criminal prosecution for purposes of the Sixth Amendment.  Cf. Glover v. United States, 531 U.S. 198, 202-04 (2001) (addressing sentencing generally).  We need not address this question as a categorical matter because this case, unlike every other one we have previously addressed, involved a motion to reconsider *expressly invited* by the trial court during the sentencing hearing.

The unusual nature of the trial court's sua sponte grant of leave to file such a motion, offered to Kozich just prior to imposing upon him three wholly unsuspended sentences, demonstrates that he remained in a critical stage of his criminal prosecution even after the conclusion of the sentencing hearing.  In this unique context, Kozich faced "potential substantial prejudice" if he refused the trial court's offer to contest the oral pronouncement of his unsuspended sentences and thus needed "the ability of counsel to help avoid that prejudice."  Wade, 388 U.S. at 227.

The existence of a right to counsel, however, is only the beginning of the Sixth Amendment analysis.  Kozich must still satisfy the familiar framework of Strickland v. Washington, 466 U.S. 668 (1984), which requires that we "determine whether counsel's representation 'fell below an objective standard of reasonableness'" and then "ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[11] "In this case," Kozich argues on appeal, "it was clear at sentencing and during all of trial counsel's deficient performance after the initial sentencing hearing, that what was at stake was either six years in prison, or a drug treatment program."  Appellee's Br. at 7; see also id. at 4, 8-9; Oral Argument Audio at 10:52 to 11:05.

14

proceeding would have been different.'" Hinton v. Alabama, ___ U.S. ___, ___, 134 S. Ct. 1081, 1088 (2014) (per curiam) (citation omitted).  Kozich argues that the habeas court's findings on ineffectiveness and prejudice — despite its application of these findings (which we reject) after the entry of the final sentencing orders — apply logically with equal force during the period between the sentencing hearing and the entry of the orders.  We agree that the trial court's findings can be segmented in this manner and, thus, should be scrutinized under the Strickland standard.[12]

The first prong of Strickland requires a showing that trial counsel's performance fell "below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  On this issue, the habeas court found that counsel was not ineffective at the sentencing hearing, but was ineffective thereafter because he failed to file a timely motion to reconsider during the time frame in which the trial court had ongoing jurisdiction to suspend or modify the sentence prior to Kozich's transfer to the Department of Corrections.  See Code § 19.2-303.[13]  If this were correct, it would be equally correct during the two-and-a-half weeks between the sentencing hearing and the entry of the final sentencing orders.

We hold that the habeas court was correct in finding counsel ineffective in this regard. The sentencing hearing presented counsel with deeply conflicting signals.  On the one hand, the

_____

[12] We take this approach relying on the "the axiom that a 'prevailing party seeks to enforce not a [trial] court's reasoning, but the court's *judgment*.'" Alexandria Redevelopment & Hous. Auth. v. Walker, 290 Va. 150, 156 n.1, 772 S.E.2d 297, 300 n.1 (2015) (alteration and emphasis in original) (quoting Jennings v. Stephens, ___ U.S. ___, ___, 135 S. Ct. 793, 799 (2015)); see also Perry v. Commonwealth, 280 Va. 572, 581-82, 701 S.E.2d 431, 437 (2010).

[13] In announcing its ruling, the habeas court stated, "we don't have any 21 day rule," referring to Rule 1:1, "that applies in these criminal cases and the Court retains jurisdiction over the matter until [the defendants] are transferred to the Department of Corrections."  That is only partly true.  Rule 1:1 does apply to criminal cases, as does Code § 19.2-303.  The latter is a narrow exception to the former.  See Kelley v. Stamos, 285 Va. 68, 77-79, 737 S.E.2d 218, 223-24 (2013); Holland v. Commonwealth, 62 Va. App. 445, 452, 749 S.E.2d 206, 209 (2013).

15

trial court suggested that it had reviewed all the relevant sentencing information, which included extensive information on Kozich's lengthy history of substance abuse. Based upon this review, the trial court told Kozich: "[P]utting you in programs doesn't work because even when you're given the opportunity of the programs, even when you're given the opportunity of probation, you can't help yourself. And so it's come to the point where I have to protect the public from you." In nearly the same breath, however, the trial court suggested that it would consider placing Kozich in a "program" if it were "appropriate" and invited Kozich's counsel to present a specific plan along those lines. The court then imposed unsuspended sentences on all three charges and sua sponte granted leave to Kozich's trial counsel "to file a motion to reconsider when a program's found" that would be suitable for Kozich.

In the face of such conflicting signals, objectively reasonable counsel would have resolved the quandary in favor of accepting the invitation to file a motion to reconsider and simultaneously making an effort to ensure that the motion was heard before the entry of any final sentencing orders. There would have been several ways trial counsel could have accomplished this. He could have requested, for example, that final sentencing orders not be entered until he had an opportunity to file a motion to reconsider and the court had an opportunity to rule on it. If the court nonetheless insisted on entering sentencing orders, counsel could have asked that the orders specifically state that leave to file a motion to reconsider had been granted and that the matter would be held in abeyance until further order of the court. Such efforts would have been important because the entry of final sentencing orders not only triggered the twenty-one day period of Rule 1:1, but even more significantly, they immediately put Kozich at risk of being transferred to a receiving unit of the Department of Corrections, thereby closing the door to the

16

trial court's power under Code § 19.2-303 to "suspend or otherwise modify" the sentences. By not making any of these efforts, Kozich's trial counsel provided ineffective assistance of counsel.

The prejudice prong asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Missouri v. Frye, ___ U.S. ___, ___, 132 S. Ct. 1399, 1409 (2012) (stating that prejudice can be shown by "a reasonable probability that the end result of the criminal process would have been more favorable by reason of . . . a sentence of less prison time"). "It is not enough," however, "for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693 (citation omitted).

On the topic of prejudice, we are faced with a peculiar circumstance in this case. If the judge presiding over the habeas case were *not* the trial judge who had presided over Kozich's sentencing, we would be inclined to say prejudice could not be shown — particularly given Kozich's extensive criminal record, his multiple unsuccessful attempts at rehabilitation, and the trial judge's statement at the sentencing hearing implying that further programs would be futile. But, in this case, the habeas judge was the trial judge, and she made a factual finding based on "knowing what was going on in [her] head." Had a motion to reconsider been filed with a specific program recommended, the judge stated, "I know that that is what I was considering. I know that that was what I was intending. . . . I had every intention of putting this gentleman in a program and giving him a chance."

17

We question, but do not pass judgment on, the propriety of a habeas court's reliance on subjective intentions of this kind for purposes of establishing prejudice. The Commonwealth waived the issue below and did not challenge this aspect of the trial court's ruling on appeal.[14] With that caveat, we accept the judge at her word and concur that her findings establish prejudice under the Strickland standard.

III.

In sum, the habeas court erred in granting a writ of habeas corpus on the ground that the sentencing orders were only to have the effect of "continuing" the case as an "open sentencing." J.A. at 112. The sentencing orders were final, appealable orders under Virginia law. No binding precedent recognizes a Sixth Amendment right to counsel to pursue a motion to reconsider a

---

[14] At the habeas hearing, the judge appropriately inquired of the Senior Assistant Attorney General representing the Virginia Department of Corrections whether he had any objection to her presiding over the habeas case. The judge stated, "I didn't know whether or not that was inappropriate since the judge is adding a component to the factual presentation that's not necessarily something that's available to counsel." Counsel for the Department of Corrections replied that he had no objection in light of "the proposition that the trial judge who did try the case is in the best position to know the record and in the best position to supervise the habeas corpus proceeding in the interests of judicial economy."

Because the Commonwealth, as appellant, took this position in the habeas court and did not attempt to repudiate it on appeal, we leave for another day the question whether this practice should be encouraged or discouraged. Cf. Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904) (stating that "no [judge's] testimony should be received [explaining a judgment] except of open and tangible facts — matters which are susceptible of evidence on both sides" and that a "judgment is a solemn record" that "should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision"); Perkins v. LeCureux, 58 F.3d 214, 220-21 (6th Cir. 1995) (holding that the district court erred in considering "a statement made by the sentencing judge ten years after the fact, regarding his thought processes at the time of sentencing"); 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 21.2, at 1154 (2014) ("The emerging rule seems to be that, except in rare circumstances, the testimony of trial judges who presided at criminal trials (and assumedly those who adjudicated the petitioners' state appeals and postconviction proceedings) is not admissible on the question whether constitutional errors affected either their own deliberations or those of jurors.").

sentence after the entry of final judgment. The habeas court erred in granting the writ on this basis.

We nonetheless agree with Kozich that the habeas court's findings of ineffectiveness of counsel and prejudice support the issuance of the writ based upon trial counsel's failure to file a timely motion to reconsider the sentences and to ensure that the trial court had an opportunity to rule on it. Counsel's failure to do so in response to an express invitation by the trial court was objectively unreasonable. This omission, coupled with the habeas court's finding that the motion would have been granted, demonstrated prejudice. The writ of habeas corpus, therefore, was properly issued for these reasons.

<u>Affirmed.</u>

JUSTICE POWELL, with whom JUSTICE McCLANAHAN joins, dissenting.

I respectfully disagree with the majority's conclusion that counsel was ineffective for failing to file a motion to reconsider Kozich's sentence and to ensure that the trial court had an opportunity to rule on it, thus causing prejudice to Kozich. The Sixth Amendment right to counsel should not be recognized for a motion to reconsider a criminal sentence as the motion is not considered a part of the criminal prosecution of a defendant.

While the majority correctly acknowledges that in order for the Sixth Amendment right to counsel to apply, the motion to reconsider must constitute a critical stage of the criminal process, it declines to address that issue as applied to these facts as a categorical matter. Rather, it focuses on the trial court's "express invitation" to file a motion to reconsider to divorce these

19

facts from previous cases. In my opinion, the majority draws a blurred line, one that we need not draw, and one that will be almost impossible to apply.[*]

Prior to today, there has been no Sixth Amendment right to counsel to file a motion to reconsider sentence based on the analysis that it is not a critical stage of a criminal prosecution. If a motion to reconsider sentence is not a critical stage of the process, it is not made so no matter when it is filed, pre- or post-entry of the final judgment, and at whose invitation — even the trial judge's invitation. The Sixth Amendment only requires "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have [a]ssistance of [c]ounsel for his defence." (Emphasis added). Unlike an arraignment, trial, or sentencing, the filing of a motion to reconsider sentence is not an aspect of a criminal prosecution that would substantially prejudice the rights of an accused. See United States v. Wade, 388 U.S. 218, 227 (1967) (holding that the critical stage analysis usually turns on the likelihood of "substantial prejudice to defendant's rights"); United States v. Hamid, 461 A.2d 1043, 1044 (D.C. 1983) ("[t]he right to request a reduction in sentence is not a right of sufficient substance to trigger the Sixth Amendment."). At the time of a motion to reconsider, the accused has already been adjudicated guilty and given a sentence. Any motion made thereafter can only be made for the purpose of reducing that sentence. The consensus view, as recognized by the majority, is that a motion to reconsider a sentence is not a

---

[*] The majority specifically finds that counsel was ineffective for failing to file a motion to reconsider during a segmented window of time between the oral pronouncement of the sentence and the entry of the final order. The alleged ineffectiveness of Kozich's trial counsel only became apparent when the trial court judge, during the later habeas case, revealed her previously undisclosed personal views on sentencing heroin addicts. It is hard to imagine how trial counsel would have known this a year earlier — when the trial judge, herself, admitted in the habeas case that she was having to "benefit[] from knowing what was going on in [her] head" during sentencing. The fact that Kozich was addicted to heroin was well known at the time of sentencing. Kozich's trial counsel orally and in writing requested a referral to a drug-treatment program in lieu of incarceration. Faced with this information, the judge's response to Kozich at his sentencing hearing was unqualified: "[P]utting you in programs doesn't work," and "so it's come to the point where I have to protect the public from you."

20

trial-related proceeding. Insofar as it is a post-trial or pre-appeal proceeding, I note that in Ross v. Moffitt, 417 U.S. 600, 618-19 (1974) the Supreme Court of the United States held that a criminal defendant does not have a constitutional right to counsel to pursue post-conviction review by way of discretionary appeal.

Thus, the post-trial issue here cannot be of sufficient substance to trigger the Sixth Amendment. I respectfully believe the majority takes the Sixth Amendment right to counsel a step too far by asserting that the trial court could make the motion to reconsider sentence a critical stage by extending an invitation for Kozich's counsel to file the motion to reconsider sentence at the end of the formal sentencing hearing, but before the entry of the final order. The purpose behind a motion to reconsider sentence is the same no matter when it is filed or at whose behest it is filed. If it is not a critical stage after the entry of final judgment, it cannot be a critical stage before the entry of final judgment.

In the federal system, there is no Sixth Amendment right to counsel for a motion to vacate or modify sentence. A motion to reconsider sentence poses no more threat to the likelihood of substantial prejudice to a defendant's rights whether it is filed before or after final judgment is entered. "This is not a situation where an indigent defendant needs legal representation to defend himself against governmental action; that is, it is not an action brought by the government against the defendant such as one to revoke probation or to revoke his parole." Burrell v. United States, 332 A.2d 344, 345 (D.C. Ct. App. 1975). See United States v. Whitebird, 55 F.3d 1007, 1011 (5th Cir. 1995) (holding that a motion to reduce sentence filed under 18 U.S.C. § 3582(c)(2) "is simply a vehicle through which appropriately sentenced prisoners can urge the court to exercise leniency to give certain defendants the benefits of an amendment to the [Sentencing] Guidelines"). Accord United States v. Harris, 568 F.3d 666, 669

21

(8th Cir. 2009); <u>United States v. Brown</u>, 565 F.3d 1093, 1094 (8th Cir. 2009); <u>United States v. Webb</u>, 565 F.3d 789, 793-95 (11th Cir. 2009); <u>United States v. Legree</u>, 205 F.3d 724, 730 (4th Cir. 2000); <u>United States v. Townsend</u>, 98 F.3d 510, 512-13 (9th Cir. 1996).

As noted by the majority in footnote 8, our unpublished orders in habeas cases have repeatedly denied claims that counsel was ineffective for failing to seek a modification or reduction of petitioner's sentence because a motion to modify or reconsider a sentence is not "'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant.'" <u>Evitts v. Lucey</u>, 469 U.S. 387, 393 (1985) (quoting <u>Griffin v. Illinois</u>, 351 U.S. 12, 18 (1956)). We have consistently focused on the nature of the motion to reconsider itself and the purpose for which it is filed (to obtain a lesser sentence) in holding that it is not a critical stage of the trial and we have done so without regard to the point at which it is filed, i.e. before or after entry of the final order. Significantly, as applied to these facts, our position has remained the same even when considering a claim made regarding the failure to file a motion before the final order has been entered. <u>See</u> <u>Farris v. Warden</u>, No. 131850 (June 26, 2014) (rejecting claims that counsel was ineffective for not filing a motion to reconsider as requested immediately after sentencing); <u>Burrell v. Director of the Dep't of Corrs.</u>, No. 131561 (Apr. 2, 2014) (rejecting claims that counsel was ineffective for not filing a motion to reconsider sentence requested in the back of the courthouse after sentencing); <u>Tate v. Warden</u>, No. 060745 (Oct. 10, 2006) (rejecting claims that counsel was ineffective for arguing a motion to reconsider on the same date as sentencing); <u>James v. Director of the Dep't of Corrs.</u>, No. 030707 (Oct. 3, 2003) (rejecting claims that counsel was ineffective for not filing a motion to reconsider after final order was entered).

Whether filed the day before or the day after entry of final judgment, a motion to reconsider sentence is not a critical stage of the proceedings. Because it is not a critical stage of the proceedings under the Constitution, it cannot be made one by the trial court judge. I would find that counsel was not ineffective, that we need not reach the prejudice prong of the Strickland analysis, and would reverse the judgment of the trial court finding counsel ineffective.