**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* G.C.

**No. 25-277** (Marshall County CC-25-2022-JA-33)

**MEMORANDUM DECISION**

Petitioner Father D.R.[1] appeals the Circuit Court of Marshall County's April 3, 2025, order modifying disposition and terminating his parental rights to G.C., arguing that the circuit court erred in modifying his disposition and terminating his parental rights instead of imposing a less restrictive dispositional alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2022, the DHS filed an abuse and neglect petition alleging that the petitioner and the child's mother neglected G.C. by exposing the child to controlled substances and failing to provide adequate supervision.[3] The DHS further alleged that the petitioner had an outstanding warrant from Ohio for his arrest for failure to appear; had three other criminal cases in Ohio involving charges of possession of controlled substances; and was indicted in Marshall County on criminal charges of burglary, animal cruelty, and petit larceny (with a potential sentence of two-to-twenty years of incarceration). Finally, the petition alleged that the petitioner was a respondent in 2020 abuse and neglect proceedings based upon his inability to care for G.C. due to his incarceration. While the DHS was unable to locate the petitioner at the time of the petition's filing, the record shows that he was incarcerated in August 2022.

In November 2022, the mother stipulated to the allegations of substance abuse and neglecting the children. The petitioner's counsel indicated that the petitioner remained incarcerated and had been sentenced to one-to-fifteen years of incarceration. Due to his incarceration, the

---

[1] The petitioner appears by counsel Roger D. Curry. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Michael B. Baum appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below included another child and adult respondent who are not at issue on appeal.

petitioner indicated that he would be unable to participate in an improvement period. The DHS noted that he had used the same defense in the prior proceedings.

At an adjudicatory hearing in August 2023, the petitioner stipulated to being unable to supervise G.C. due to his incarceration, and the court adjudicated the petitioner of neglecting the child on this basis. The court also granted the mother a post-adjudicatory improvement period and, at the petitioner's request, granted the petitioner a disposition pursuant to West Virginia Code § 49-4-604(c)(5) ("Disposition 5"). However, the circuit court later terminated the mother's improvement period and her parental rights in October 2024. Subsequently, the DHS filed a motion to modify the petitioner's disposition and terminate his parental rights.

The circuit court held a hearing on the DHS's motion in February 2025. At this hearing, the court heard from a DHS caseworker, who testified that the petitioner's Disposition 5 was granted in the context of the mother's improvement period and was intended to provide the petitioner with an opportunity to demonstrate his willingness and ability to care for G.C. However, the caseworker represented that, despite being released from his original incarceration, the petitioner had neither demonstrated any change nor contacted the DHS before being reincarcerated. Additionally, the caseworker stated that the DHS was seeking termination of the petitioner's parental rights to allow for G.C. to be adopted in his kinship placement, where the child had lived since his initial removal almost three years prior. The petitioner then testified that he was released on parole in January 2024 but was reincarcerated in October 2024 following his arrest for a new misdemeanor. The petitioner stated that he had phone contact with G.C. for a short period following his release until he was told by the DHS that he needed to file additional paperwork, which he did not do. However, the petitioner acknowledged that he lacked housing and was unable to provide for the child at the time of the hearing. The petitioner then asserted that, despite his new misdemeanor charge, his parole would not be revoked and that he would be released from incarceration in approximately one month. However, the petitioner claimed that it would take another seven-to-nine months after that point for him to be able to care for G.C. Following this testimony, the petitioner's counsel requested that the record remain open to allow for incorporation of the outcome of the petitioner's misdemeanor proceedings.

Ultimately, the circuit court entered an order modifying the petitioner's disposition and terminating his parental rights to G.C. in April 2025. The court found that, at the time of the petitioner's original disposition, the mother had been granted an improvement period and the child's permanency plan was reunification. However, since then, the court terminated the mother's rights and the petitioner committed a new misdemeanor offense while on parole. The court found that, following the petitioner's initial release from incarceration, he did not make any attempt to contact the DHS or to determine the steps necessary to obtain custody of G.C. Further, despite his claims, the petitioner was not released following the modification hearing. Based on the foregoing, the circuit court concluded that there had been a material change in circumstances and that it was in the G.C.'s best interests to modify the petitioner's disposition to allow the child to be adopted. The court further concluded that there was no reasonable likelihood that the petitioner could correct the conditions of neglect in the near future and that termination of the petitioner's parental rights

was necessary for G.C.'s welfare due to the child's need for continuity of care and caretakers. It is from this dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred by modifying his disposition and terminating his parental rights because the child's best interests would be equally served by preserving his parental rights. *See* W. Va. Code § 49-4-606(a) (permitting modification of a dispositional order "if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests"); *see also In re S.W.*, 236 W. Va. 309, 315, 779 S.E.2d 557, 583 (2015) (explaining that West Virginia Code § 49-4-606(a) "prohibit[s] a modification of the disposition . . . in the absence of a showing that the child's best interests would be served by altering the status quo"). The petitioner contends that allowing him to retain his parental rights would not affect the child's permanency, as he would consent to the child's adoption and allowing him to maintain his parental rights would allow him to provide future support for the child. We do not find these arguments availing. "Ensuring finality for . . . children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). "This Court has repeatedly emphasized that children are entitled to permanency to the greatest degree possible." *In re B.S.*, 242 W. Va. 123, 131, 829 S.E.2d 754, 762 (2019). The record shows that the court considered the child's permanency in modifying the petitioner's disposition, as allowing the petitioner to retain his parental rights would jeopardize the child's adoption in his current placement. The petitioner's own argument supports this proposition as, despite his assertion that he would consent to the child's adoption, he acknowledges the possibility that he could later "change his mind" and object to the adoption if permitted to retain his parental rights. As a result, the circuit court's finding that modification of the petitioner's disposition was in the child's best interests is well-supported by the record. *See* Syl. Pt. 2, *State v. Michael*, 202 W. Va. 350, 504 S.E.2d 177 (1998) (holding that "an adoptive home is the preferred permanent out-of-home placement of the child"). Further, as the petitioner does not challenge the court's finding that there was a material change in circumstances, we conclude that the circuit court did not err in modifying the petitioner's disposition.

The petitioner also argues that the circuit court erred in terminating his parental rights instead of imposing a less restrictive alternative. We have held that termination of parental rights "may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect . . . can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Here, the petitioner does not challenge the circuit court's finding that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and the record supports this finding. Accordingly, the petitioner is not entitled to a less restrictive alternative. Further, as stated above, the record demonstrates that the circuit court properly

---

[4] All parental rights were terminated, and the permanency plan for G.C. is adoption in his current placement.

weighed G.C.'s need for permanency in finding that termination of the petitioner's parental rights was necessary for the child's welfare. As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights based upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing the termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect . . . can be substantially corrected in the near future and, when necessary for the welfare of the child").

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 3, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4